No. 25-40031
*consolidated with*
No. 25-40364

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### SARAH S.C. MOREAU
*Plaintiff – Appellee*

v.

### ANDREW CHRISTOPHER WHITE
*Defendant – Appellant*

On Appeal from the United States District Court for the
Eastern District of Texas, Sherman Division
U.S.D.C. No. 4:24-cv-00857, Judge Amos L. Mazzant

---

## BRIEF OF APPELLANT

---

Geoffrey D. Weisbart
Texas Bar No. 21102645
gweisbart@weisbartspringer.com
Julie A. Springer
Texas Bar No. 18966770
jspringer@weisbartspringer.com
Sara E. Janes
Texas Bar No. 24056551
sjanes@weisbartspringer.com

WEISBART SPRINGER STORM
  HATCHITT, LLP
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

ATTORNEYS FOR APPELLANT ANDREW CHRISTOPHER WHITE

ORAL ARGUMENT REQUESTED

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| Interested Parties | Description of Interest |
|---|---|
| Andrew Christopher White | Defendant–Respondent–Appellant |
| Joshua H. Northam<br>Texas Bar No. 24029749<br>jnortham@shackelford.law<br>SHACKELFORD, MCKINLEY<br>  & NORTON LLP<br>9201 N. Central Expressway, 4th Floor<br>Dallas, Texas 75231<br>214.780.1400 | Trial Counsel for Appellant |
| John J. Kappel<br>Texas Bar No. 24085876<br>jkappel@foxrothschild.com<br>FOX ROTHSCHILD LLP<br>Saint Ann Court<br>2501 N. Harwood Street<br>Suite 1800<br>Dallas, Texas 75201<br>214.231.5793<br>972.404.1051 fax | Prior Trial and Appellate Counsel for Appellant |

| | |
|---|---|
| Geoffrey D. Weisbart<br>Texas Bar No. 21102645<br>gweisbart@weisbartspringer.com<br>Julie A. Springer<br>Texas Bar No. 18966770<br>jspringer@weisbartspringer.com<br>Sara E. Janes<br>Texas Bar No. 24056551<br>sjanes@weisbartspringer.com<br>WEISBART SPRINGER STORM<br>  HATCHITT, LLP<br>212 Lavaca Street, Suite 200<br>Austin, Texas  78701<br>512.652.5780<br>512.682.2074 fax | Appellate Counsel for<br>Appellant |
| Sarah S.C. Moreau | Plaintiff–Petitioner–Appellee |
| Stephen J. Cullen<br>D.C. Bar No. 439872<br>scullen@milesstockbridge.com<br>Kelly A. Powers<br>D.C. Bar No. 1007106<br>kpowers@milesstockbridge.com<br>MILES & STOCKBRIDGE, P.C.<br>1201 Pennsylvania Avenue, N.W.<br>Suite 900<br>Washington, D.C. 20004<br>202.465.8374<br><br>James A. Sullivan, Jr.<br>D.C. Bar No. 475145<br>jsullivan@milesstockbridge.com<br>MILES & STOCKBRIDGE, P.C.<br>11 N. Washington Street, Suite 700<br>Rockville, Maryland 20850<br>301.517.4824 | Trial and Appellate Counsel for<br>Appellee |

| | |
|---|---|
| L. Kirstine Rogers<br>Texas Bar No. 24033009<br>krogers@lkrpllc.com<br>L. KIRSTINE ROGERS PLLC<br>5345 Towne Square Drive<br>Suite 140<br>Plano, Texas 75024<br>214.244.0237 | Guardian Ad Litem |

Dated: July 18, 2025
/s/ Geoffrey D. Weisbart

Geoffrey D. Weisbart
Texas Bar No. 21102645
gweisbart@weisbartspringer.com
Julie A. Springer
Texas Bar No. 18966770
jspringer@weisbartspringer.com
Sara E. Janes
Texas Bar No. 24056551
sjanes@weisbartspringer.com
WEISBART SPRINGER STORM
 HATCHITT LLP
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

ATTORNEYS FOR APPELLANT ANDREW
CHRISTOPHER WHITE

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument would be helpful—if not necessary—to the Court in understanding the complex procedural background of this case, which involves legal proceedings in three fora going back as far as August 2018. In addition, the case involves a request for return of children pursuant to the Hague Convention on International Child Abduction, implicates a question of first impression, and demonstrates the importance of the Convention's prohibition against international forum shopping. Finally, because the case involves two young boys, it is exceedingly important to the parent-litigants and their children.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ......................................................... v

Table of Contents....................................................................................... vi

Table of Authorities................................................................................... ix

Jurisdictional Statement............................................................................ xii

Statement of the Issues.............................................................................. xiv

Statement of the Case ................................................................................ 1

   I.   Facts relevant to the Return Order.................................................. 1

      A.   The family's foundations are in the United States. .................. 1

      B.   Moreau files a divorce and custody suit in Texas. .................... 2

      C.   Moreau obtains temporary permission to designate the
          primary residence of the children without geographic
          restriction................................................................................... 3

      D.   The parties continue to litigate in Texas.................................. 4

      E.   Moreau seeks an order prohibiting removal of the children
          from Canada but continues to affirm Texas's jurisdiction. ....... 5

      F.   Texas issues a series of orders, including one requiring that
          the children reside in Texas by July 1, 2024.............................. 6

      G.   Canada declines to exercise jurisdiction over the parties'
          custody dispute and stays the Canadian proceedings. .............. 8

      H.   Defying Texas orders, Moreau refuses to bring the children to
          Texas. ......................................................................................... 9

      I.   Canada recognizes the August 2023 Texas Order. .................... 9

      J.   Texas denies Moreau's motion to reconsider the August 2023
          Texas Order. ............................................................................. 10

      K.   Canada requires that the children return to Texas on August
          4, 2024 and that White transfer the children to a designated
          person appointed by Moreau on August 29.............................. 12

      L.   The children remain in Texas. ................................................... 13

      M.   Moreau files a petition under the Convention. ......................... 14

Summary of Argument ............................................................................ 16

Argument ................................................................................................ 21

I.   This Court should vacate the Return Order and render judgment on Moreau's Hague Petition. ....................................................... 21

   A.   Moreau is judicially estopped from asserting that the custody trial should take place anywhere but Texas. .......................... 21

     1.   Moreau repeatedly represented that Final Trial should occur in Texas. ................................................................... 22

     2.   Texas relied on Moreau's representations. ........................... 28

     3.   Absent estoppel, Moreau will derive an unfair benefit and impose an unfair detriment on White. .................................. 29

     4.   Estopping Moreau furthers the Convention's goals. ............ 30

   B.   Moreau consented to Texas's jurisdiction................................. 31

     1.   In Larbie, as here, the mother resorted to a Hague petition after numerous instances of consenting to Texas jurisdiction. ................................................................................... 33

     2.   The District Court's attempts to distinguish *Larbie* fail ...... 34

   C.   The United States is the children's habitual residence........... 39

     1.   As a matter of law, the children's habitual residence could not change while they were temporarily residing outside the US with the permission of Texas, mid-custody proceeding. 40

     2.   Additionally, the Court clearly erred in finding Canada is the children's habitual residence under the totality of the circumstances here. .............................................................. 48

   D.   Alternatively, Moreau failed to establish that White's retention of the children in Texas breached her rights of custody under Canadian law. ........................................................................ 53

     1.   Moreau's rights of custody derived from a recognized order, not from statute. ................................................................ 54

       a.   Any determination regarding whether Moreau's "rights of custody" were breached must necessarily begin with a determination of what "rights of custody" she held ........ 54

b.    The parties' rights of custody under Canadian law were allocated, and held, pursuant to the recognized August 2023 Texas Order. ..........................................................55

2.    The August 2, 2024 Canadian order did not confer custody rights on Moreau. ...................................................58

II.    The Injunction should be vacated. ...............................................61

A.    The Injunction improperly mandates conduct by the tribunal of a foreign sovereign nation, ignoring that Canada had affirmatively declined jurisdiction. ..........................................61

B.    The Injunction erroneously includes child support in the matters the district court prohibited Texas from deciding......64

Conclusion and Prayer ...........................................................................65

Certificate of Service ..............................................................................67

Certificate of Compliance ......................................................................68

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Abbott v. Abbott*,
<u>560 U.S. 1</u> (2010) ................................................................ 18

*Berezowsky v. Ojeda*,
<u>765 F.3d 456</u> (5th Cir. 2014) ......................................... 17, 44, 45, 46

*De La Rosa v. Alonso*,
No. 4:24-CV-00059-AGD, <u>2024 U.S. Dist. LEXIS 197753</u> (E.D.
Tex. 2024) ...................................................................... 50

*England v. England*,
<u>234 F.3d 268</u> (5th Cir. 2000) ............................................ 17

*Galaviz v. Reyes*,
<u>95 F.4th 246</u> (5th Cir. 2024) ...................................... 17, 30

*Garcia v. Pinelo*,
<u>808 F.3d 1158</u> (7th Cir. 2015) .......................................... 32

*Golan v. Saada*,
<u>596 U.S. 666</u> (2022) ..................................................... 30, 32

*Griggs v. Provident Consumer Discount Co.*,
<u>459 U.S. 56</u> (1982) ....................................................... 64

*Harm v. Lake-Harm*,
<u>16 F.4th 450</u> (5th Cir. 2021) .................................... passim

*In re Alanis*,
<u>350 S.W.3d 322</u> (Tex. App.—San Antonio 2011, orig. proceeding) .... 6

*In re Coastal Plains, Inc.*,
<u>179 F.3d 197</u> (5th Cir. 1999) ........................................... 22

*In re Superior Crewboats, Inc.*,
<u>374 F.3d 330</u> (5th Cir. 2004) ................................. 21, 22, 29, 31

*JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*,
<u>936 F.3d 251</u> (5th Cir. 2019) .......................................... 22

*Kaepa, Inc. v. Achilles Corp.,*
    76 F.3d 624 (5th Cir. 1996) ........................................................ 61

*Karaha Bodas Co. v. Negara,*
    335 F.3d 357 (5th Cir. 2003) .................................................. 61, 62

*Koon v. United States,*
    518 U.S. 81 (1996) ...................................................................... 22

*Larbie v. Larbie,*
    690 F.3d 295 (5th Cir. 2012) ............................................... passim

*Marrese v. Am. Acad. Of Orthopedic Surgeons,*
    470 U.S. 373 (1985) .................................................................... 64

*Monasky v. Taglieri,*
    589 U.S. 68 (2020) .............................................................. passim

*Occidental Petro. Corp. v. Wells Fargo Bank, N.A.,*
    117 F.4th 628 (5th Cir. 2024) ............................................... 21, 22

*Smith v. Smith,*
    976 F.3d 558 (5th Cir. 2020) ........................... 39, 49, 50, 32

*United States v. U.S. Gypsum Co.,*
    333 U.S. 364 (1948) ........................................................... 39, 49

*White v. White,*
    718 F.3d 300 (4th Cir. 2013) .............................................. 53, 57

**Statutes**

22 U.S.C. § 9001 ............................................................................ x

22 U.S.C. § 9003(a) ....................................................................... x

22 U.S.C. § 9003(e)(1)(A) ................................................... 39, 49, 53

22 U.S.C. § 9003(e)(2)(B) ............................................................ 32

Tex. Fam. Code § 153.36(6) ......................................................... 59

Tex. Fam. Code § 153.311-15 ....................................................... 59

Tex. Fam. Code § 201.015 .............................................................. 8

Texas Family Code § 153.311-153.317 ......................................... 59

**Rules**

Fed. R. App. P. 32(a)(5) & (a)(6) ................................................. 68

Fed. R. App. P. 32(a)(7)(B) ....................................................... 68

Fed. R. App. P. 32(f) ............................................................. 68

51 Fed. Reg. 10494 (Mar. 26, 1986) ........................................... 18

## JURISDICTIONAL STATEMENT

The District Court has subject matter jurisdiction over this case under 22 U.S.C. § 9003(a) because it concerns claims under The Hague Convention on the Civil Aspects of International Child Abduction and its implementing statute, the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq*.

This is a consolidated appeal of two cases: Case No. 25-40031 and Case No. 25-40364, both of which were filed by White and arise out of district court case number 4:24-cv-00857. Doc. 66.

This Court has jurisdiction over Case No. 25-40031 under 28 U.S.C. § 1291 because it is an appeal of a final judgment, disposing of all claims and parties, issued by the district court on January 17, 2025. ROA.25-40031.2150. White timely appealed the final judgment on January 21, 2025, within 30 days of the district court's judgment. ROA.25-40031.2151.

This Court has jurisdiction over Case No. 25-40364 under 28 U.S.C. § 1292(a)(1) because it is an appeal of an interlocutory order of the district court granting an injunction, issued on May 28, 2025. ROA.25-

40364.3055-76. White timely appealed the injunction order on June 11, 2025, within 30 days of the district court's order. ROA.25-40364.3083-85.

# STATEMENT OF THE ISSUES

I.    The Court should vacate the Hague Return Order because:

    a.  Moreau is judicially estopped from asserting that final trial should not take place in Texas;

    b.  Moreau's conduct gives rise to a consent defense;

    c.  The United States is the habitual residence; and, alternatively,

    d.  The children's retention was not in breach of Moreau's rights of custody.

II.   The Court should vacate the Injunction because:

    a.  The Return Order cannot stand;

    b.  It orders Canada to take certain action;

    c.  It broadens the scope of the Final Judgment.

## STATEMENT OF THE CASE

This case stems from a child custody suit Moreau commenced in Texas in 2018. ROA.25-40031.2748. The parties continuously litigated that suit in Texas, and when Moreau filed her Hague petition in September 2024 it was set for trial in April 2025. ROA.25-40031.10, 91-132, 2917. It is undisputed that Texas had, until the Injunction, prevented it from doing so, asserted continuing and exclusive jurisdiction over the children.

### I.     Facts relevant to the Return Order.

#### A. The family's foundations are in the United States.

White and Moreau are the parents of two children, ages seven and ten. ROA.25-40031.135, 2116. White has always lived in the U.S. and is a U.S. Citizen. ROA.25-40031.1332. Moreau, a Canadian citizen, moved to the U.S. in 2004 and lived in the U.S. for at least fifteen consecutive years. ROA.25-40031.816, 1332.

White and Moreau met in New York in 2006, lived together there starting in 2009, and married there in 2013. ROA.25-40031.816, 1332, 2431:2-2432:5. They moved to Texas in 2014, where their children were born and they accumulated property, including a marital residence. ROA.25-40031.1332.

Their son, W.F.W., was born in 2015. ROA.25-40031.135. Their son, C.C.W., was born in 2017. ROA.25-40031.135. The family lived together in Dallas County, Texas. ROA.25-40031.2117.

### B. Moreau files a divorce and custody suit in Texas.

In August 2018, Moreau filed a petition for divorce and a suit affecting the parent–child relationship (SAPCR) in the District Court for the 303rd Judicial District, Dallas County, Texas (Texas). ROA.25-40031.2748. In the petition, Moreau sought and was appointed to be the children's sole managing conservator and granted the right to designate the children's primary residence. ROA.25-40031.2750-51. The parties litigated throughout 2018 and 2019. ROA.25-40031.2704-22.

Moreau also sought and obtained a protective order, alleging that White had committed family violence during periods of drug or alcohol use. ROA.25-40031.2749, 2751, 2240:2-5. That order expired in October 2019. ROA.25-40031.3283.[1] White firmly denies committing any acts of family violence. ROA.25-40031.2438:4-6. Regardless, Moreau agreed White was in a "much better state," and it is undisputed he has been

---

[1] White was arrested for allegedly violating the protective order in March 2019. The charges were dismissed entirely in 2022. ROA.25-40031.410.

sober for many years. ROA.25-40031.2436:12-2437:16, 2956:18-2957:7, 3014.

As two different tribunals have found, both parents love their children, and the children love both parents. ROA.25-40031.610; ROA.25-40364.3072.

### C. Moreau obtains temporary permission to designate the primary residence of the children without geographic restriction.

In December 2019, Moreau asked Texas to allow her to temporarily relocate the children to Canada. ROA.25-40031.2924:16-21.

She and her counsel repeatedly represented to Texas that the move would be temporary, and that if the court ordered Moreau to return for a final trial in Texas, she would. ROA.25-40031.2925:16-18, 2926:11-21, 2927:23-2928:16, 2929:22-24. Based on those representations, Texas granted Moreau the right to designate the primary residence of the children without geographic restriction. ROA.25-40031.1663. When White objected that there was no date certain for their return, the judge emphasized that the orders were only temporary and stated to White "I am not going to explain the issues of…temporary and international treaties." ROA.25-40031.2930:7-23. Texas's February 20 Order

memorializing the December 2019 rulings provided "These Further Temporary Orders shall continue in force until the signing of the Final Decree of Divorce or until further order of this Court." ROA.25-40031.137.

### D. The parties continue to litigate in Texas.

The parties continued to litigate in Texas in 2020 and 2021. ROA.25-40031.110-16. On November 23, 2021, White filed a First Amended Motion to Clarify Possession and Access and Request Further Temporary Orders. ROA.25-40031.2725. On November 30, 2021, Texas held a hearing. During that hearing, the court ordered Moreau to make the children available to White twice a week via Zoom. ROA.25-40031.2809. Texas further reset the November 23 motion for hearing for December 22, 2021. ROA.25-40031.2809. On June 24, 2022, White filed a First Amended Motion for Enforcement. Texas ordered Moreau to appear and respond to the motion on July 11, 2022. ROA.25-40031.447.

On July 6, 2022, White filed a motion asking to be appointed temporary sole managing conservator, with the right to designate the primary residence of the children within Dallas and contiguous counties in Texas and to prohibit Moreau from removing the children from same

as of September 1, 2022. ROA.25-40031.13.  Five days before she was required to appear on White's Motion for Enforcement, Moreau filed a Motion to Bifurcate and Transfer (Transfer Motion), requesting that Texas transfer the SAPCR to Canada. ROA.25-40031.437-38. Moreau subsequently abandoned the Transfer Motion. ROA.25-40031.402.[2]

### E. Moreau seeks an order prohibiting removal of the children from Canada but continues to affirm Texas's jurisdiction.

On September 15, 2022, Moreau filed a "notice of family claim" and a "without notice" (ex parte) application in Canada, which she filed to obtain "a non-removal order to protect the status quo" and to have the existing Texas orders recognized in Canada.  ROA 25-40031.13-14, 2938.

Moreau's request was granted on September 15, 2022 and extended on September 29, 2022. ROA.25-40031.1700, 1698. These orders were later vacated because Moreau obtained them in violation of her duty of full and frank disclosure to the court. ROA.25-40031.400-01, 415-21, 427.

---

[2] Contrary to the District Court's Findings, Texas did not deny the Transfer Motion. ROA.25-40031.2120. ROA.25-40031.402, 410.

**F. Texas issues a series of orders, including one requiring that the children reside in Texas by July 1, 2024.**

In March 2023, Moreau filed a motion asking Texas to dismiss the SAPCR for inconvenient forum on the basis that child-related issues should be heard in Canada. ROA.25-40031.256-58.[3] Texas denied her motion on May 12, 2023. ROA.25-40031.397.

Also in May 2023, Texas granted White additional possession time and determined that supervised possession was no longer appropriate. ROA.25-40031.140-41, 411. Under the May 2023 order, White was supposed to have possession of the children in Texas from July 1 to 14, 2023. ROA.25-40031.411. On the eve of that possession period, Moreau sought and obtained another temporary ex parte protective order, prohibiting White from taking possession. ROA.25-40031.2790. After a hearing, Texas found "no cause exist[ed]" to make that order into a temporary injunction, rendered the order "of no further force and effect,"

---

[3] Mandamus relief is available for denials of motions to dismiss for inconvenient forum. *In re Alanis*, 350 S.W.3d 322, 328 (Tex. App.—San Antonio 2011, orig. proceeding). Moreau did not file a petition for writ of mandamus.

and rescheduled White's two-week possession period. ROA.25-40031.2790.

In August 2023, Texas held a hearing on White's motion to have the children relocated back to Texas and to significantly increase his possession and conservatorship rights. ROA.25-40031.224-38. Moreau asked the court to give her a year to transition back to Texas, reaffirmed her understanding that the time in Canada was a "temporary arrangement," and she "would move back if ordered to do so." ROA.25-40031.2958:9-2959:7.

In accord with those representations, the Associate Judge issued a ruling:

- Appointing both parties as Temporary Joint Managing Conservators with a shared possession schedule;

- Giving Moreau the right to determine the primary residence of the children;

- Placing geographic restrictions on the children's residence:

  o Until July 1, 2024, Dallas and Collin Counties, Texas and Victoria Island, British Columbia.

  o Beginning July 1, 2024, Dallas and Collin Counties, Texas, only; and

- Giving White significant possession time in Texas, including July 1-31, 2024.

ROA.25-40031.2777-78; *see also* ROA.25-40031.2793-98. Moreau did not seek review of the August 2 order. ROA.25-40031.345:23-346:6; Tex. Fam. Code § 201.015. Instead, the parties entered into Rule 11 Agreements regarding certain terms of the order, expressly retaining the requirement that Moreau relocate to Texas by July 1, 2024. ROA.25-40031.2778, 2781-86.

In November 2023, Moreau filed a demand for a jury trial and on January 24, 2024, Moreau filed an Emergency Motion for Continuance, Request for Pre-Trial Hearing and Trial Date. ROA.25-40031.122, 2905.

On June 10, 2024, Moreau filed a motion for reconsideration of the August 2023 order. ROA.25-40031.345:23-346:12. Texas signed an order confirming the terms of the August 2023 ruling on June 28, 2024. ROA.25-40031.2793-98.

> ### G. Canada declines to exercise jurisdiction over the parties' custody dispute and stays the Canadian proceedings.

On June 21, 2024, Moreau filed another application in Canada seeking a non-removal order. ROA.25-40031.212. On June 28, 2024, Canada ruled (the Tucker Order) that:

- Moreau's application for the non-removal order was dismissed. ROA.25-40031.427.

8

- The Canadian action was stayed, based on Canada's *forum non conveniens* analysis. "Assuming this Court has any jurisdiction to exercise here," the judge wrote, "I find that it should decline to do so." ROA.25-40031.423-27.

### H. Defying Texas orders, Moreau refuses to bring the children to Texas.

Moreau did not deliver the children to Texas on July 1, 2024. ROA.25-40031.343:25-344:4, 589. On July 8, 2024, Texas issued a writ of habeas corpus and ordered Moreau to surrender the children the next day because Moreau had "illegally confined and restrained the children." ROA.25-40031.2811-12, 2016. Moreau did not comply.

On July 12, 2024, Moreau filed a petition for a writ of mandamus with the Dallas Court of Appeals in which she challenged, among other things, Texas's orders that the children's residence be restricted to Dallas and Collin Counties. ROA.25-40031.2819, 2827. The court of appeals denied her petition four days later. ROA.25-40031.168-69.

### I. Canada recognizes the August 2023 Texas Order.

On July 15, 2024, Canada entered an order recognizing the August 2023 Texas Order as an extraprovincial order. ROA.25-40031.578 (the Recognition Order). Canada lifted the stay imposed by the Tucker Order

just for the purposes of White's applications under section 75 and Moreau's response. ROA.25-40031.610-11.

Canada "recognized" the August 2023 Texas Order and stated that its provisions "shall be construed as if they were orders in relation to guardianship of, parenting arrangements for, or contact with the Children." ROA.25-40031.611. Canada also delayed enforcement of some terms to give Texas time to consider Moreau's argument that circumstances had changed since August 2023. ROA.25-40031.580-1, 608, 612.

Canada also addressed Moreau's request that White be ordered not to remove the children from Canada and that she be given sole parental responsibilities. ROA.25-40031.578. Canada explained that, in light of the Tucker Order, it could not "consider this application because of the principles of *res judicata* and issue estoppel." ROA.25-40031.578; *see also* ROA.25-40031.580.

### J. Texas denies Moreau's motion to reconsider the August 2023 Texas Order.

On July 15, 2024, Texas issued yet another order requiring the return of the children. ROA.25-40031.251. Moreau did not comply.

On July 19, 2024, Texas held a hearing on Moreau's motion to reconsider the August 2023 Order. ROA.25-40031.260-396. Moreau gave multiple excuses for not returning the children by July 1, including that she suffered food poisoning, the children were sick, and she was afraid of arrest. ROA.25-40031.321:22-322:2, 342:25-344:4, 330:18-22. Notably, Moreau did not say that she believed that the proceedings in Texas should stop or that a final trial should occur in Canada. Instead, Moreau said she was "asking for the status quo until we can have a trial." ROA.25-40031.351:14-25. Texas denied the motion for reconsideration the same day. ROA.25-40031.2817.[4] Moreau still did not comply.

On July 25, 2024, Texas gave White the exclusive right to designate the primary residence of the children within Dallas and Collin Counties and required the children to be enrolled in a public school zoned to White's residence. ROA.25-40031.252.

---

[4] Moreau and her counsel continued to acknowledge that trial would occur in Texas. ROA.25-40031.272, 351.

### K. Canada requires that the children return to Texas on August 4, 2024 and that White transfer the children to a designated person appointed by Moreau on August 29.

On August 2, 2024, after Texas had a chance to consider Moreau's arguments regarding changed circumstances, Canada held a hearing regarding enforcement of the August 2023 Texas Order. ROA.25-40031.963. When there was not enough time to complete the hearing, Canada adjourned the matter to August 30, 2024. ROA.25-40031.3067. The "Terms of Order" entered that day provided that Moreau was required to transfer the children to the children's paternal grandfather on August 4 at her house; that White was required to transfer the children to a designated person appointed by Moreau on August 29, 2024; and that the orders were without prejudice to White's jurisdictional arguments. ROA.25-40031.3067.

The children returned to Texas on August 4, 2024.

On August 8, 2024, Moreau filed a mandamus petition in the Texas Supreme Court, again seeking relief from Texas's orders restricting the children's residence to Dallas and Collin Counties. ROA.25-40031.2844, 2852. Moreau told the court that she "has submitted to the Trial Court's jurisdiction and was present when the case was set for final trial in April

12

2025," and that her "request is not to usurp the Trial Court's jurisdiction …" ROA.25-40031.197. The petition was denied on August 29, 2024. ROA.25-40031.200.

### L. The children remain in Texas.

While Moreau inquired about whether White's father could bring the children to Canada on August 29, there is no evidence that Moreau ever designated an individual to whom White was to transfer the children on August 29. The children therefore remained in Texas.

On August 30, 2024, Texas issued a temporary ex parte restraining order prohibiting Moreau from removing the children from Dallas and Collin Counties, Texas. ROA.25-40031.253. The order was extended on September 13, 2024, and Moreau agreed to its further extension on September 20, 2024. ROA.25-40031.441.

Also on August 30, 2024, Canada continued the hearing that had been adjourned from August 2. ROA.25-40031.1077. At the conclusion of this hearing, the court entered an order that states it is from August 2— but it was not signed or entered until August 30, and its terms are noticeably different than the August 2 order. *Compare* ROA.25-40031.3067, *with* ROA.25-40031.1820-21; *see also* ROA.25-40031.1143-

44. It is this later order that the District Court refers to as the August 2, 2024 order. ROA.25-40031.2126. Moreau's Canadian Counsel misrepresented that White had not objected to the terms of the order entered on August 30; White had objected to any form that did not strictly comply with the previously issued August 2 order. ROA.25-40031.1143, 3116-19. On September 11, 2024, Canada issued an order declining to vary the supersession in the Recognition Order, dismissing White's applications to recognize subsequent Texas orders, and finding White in breach of the terms of the Adjournment Order. ROA.25-40031.574. White's appeal of that finding is ongoing.

## M.   Moreau files a petition under the Convention.

On September 24, 2024, Moreau filed her Hague Convention petition. ROA.25-40031.10. White filed a motion to dismiss on abstention and judicial estoppel grounds, which was denied. ROA.25-40031.1288-92. The District Court held a trial on the merits on December 16 and 17, 2024. ROA.25-40031.6.

In a January 17, 2025 final judgment (the Return Order), the District Court granted Moreau's petition and ordered that the children be returned to Canada. ROA.25-40031.2150. In its Findings of Fact and

Conclusions of Law (Findings), the District Court concluded, among other things, that:

- Canada is the children's habitual residence.

- White's retention of the children in Texas, which the District Court found occurred on August 5, 2024, was in breach of Moreau's rights of custody under Canadian law.

- The consent defense did not apply.

- Judicial estoppel did not apply.

- Canada "must decide the custody dispute."

ROA.25-40031.2127, 2130-44, 2148. White timely appealed on January 21, 2025. ROA.25-40031.2151. The children returned to Canada on January 30. ROA.25-40364.1735.

After issuance of the Return Order, the parties continued to litigate matters in Texas. ROA.25-40364.1519-20. For example, White sought to hold Moreau in contempt for her violation of the Texas orders requiring that she return the children to Texas. ROA.25-40364.2391.

On March 3, 2025, the day of the contempt hearing, Moreau filed a motion to dismiss the Texas SAPCR for lack of jurisdiction. ROA.25-40364.1558-63. Texas denied the motion to dismiss on April 24, 2025. ROA.25-40364.1671.

On April 29, 2025, Moreau filed a motion for a temporary restraining order, preliminary injunction, and permanent injunction with the District Court. ROA.25-40364.1519-20. On May 28, 2025, the District Court entered a preliminary injunction that:

- Prohibits White from litigating the "child custody dispute" in Texas;

- Orders two Texas state court judges to cease and desist proceeding with the child custody dispute, and from entering any temporary or final orders in the child custody dispute;

- Sets forth a broad definition of "child custody dispute" that includes not only custody and access but child support;

- Declares that Texas "lacks jurisdiction;" and

- Orders that Canada "shall" decide the child custody dispute.

ROA.25-40364.3055-76. White timely appealed the Injunction on June 11, 2025. ROA.25-40364.3083-85.

On July 1, 2025, this Court consolidated the appeal of the Return Order, Case No. 25-40031, with the appeal of the Injunction, Case No. 25-40364, and expedited the Injunction appeal onto the same briefing schedule as the Return Order appeal. Doc. 66.

## SUMMARY OF ARGUMENT

The Hague Convention "is aimed at preventing parents from engaging in international forum shopping and gamesmanship by moving

16

a child to a new country in hopes of obtaining a more favorable custody determination from a different court." *Berezowsky v. Ojeda*, 765 F.3d 456, 472 (5th Cir. 2014), overruled on other grounds by *Monasky v. Taglieri*, 589 U.S. 68 (2020). It seeks to "deter parents from crossing borders in search of a more sympathetic court.'" *Galaviz v. Reyes*, 95 F.4th 246, 251 (5th Cir. 2024) (quoting *England v. England*, 234 F.3d 268, 270 (5th Cir. 2000)).

The District Court's Return Order turns the Hague on its head by rewarding Moreau for her forum shopping. Moreau is the only parent who has crossed international borders. Moreau is the parent who filed proceedings in multiple fora. When she filed her Hague petition, she and White had been continuously litigating in Texas for six years, and a jury trial—that Moreau demanded—was set to occur in Texas just months later. Moreau filed her Hague petition a mere six weeks after representing, in an unsuccessful petition for a writ of mandamus in the Supreme Court of Texas challenging the merits of temporary custody orders (but not the jurisdiction to enter them). Indeed, in her mandamus petition she asserted that she had submitted to Texas jurisdiction, which she did not intend to usurp. It strains credulity to imagine that, had her

petition been successful, she still would have sought relief under the Convention.

"The Convention's central operating feature is the return remedy." *Abbott v. Abbott,* 560 U.S. 1, 9 (2010). As the Supreme Court has explained, the return remedy "is a 'provisional' remedy that fixes the forum for custody proceedings." *Monasky*, 589 U.S. at 72. Indeed, Hague cases "call[] on [courts] to decide which country has jurisdiction over an international child-custody dispute." *Harm v. Lake-Harm*, 16 F.4th 450, 451 (5th Cir. 2021). Here, Texas has—and has had—jurisdiction for six years.

Moreover, Canada—the country to which the children were returned—had already expressly declined to exercise jurisdiction in favor of Texas. Fixing the forum for custody proceedings in Canada, when both nations had decided Texas should decide the matter, blatantly violates one of the two stated "objects" of the Convention, which is "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, T.I.A.S. No. 11, 670, 1343 U.N.T.S. 49, art. 1 (reprinted at 51 Fed. Reg.

10494 (Mar. 26, 1986)) (hereinafter Convention). Texas—not Canada—should decide the parties' custody dispute.

Accordingly, this Court should vacate the District Court's Return Order for four reasons.

First, Moreau is judicially estopped from claiming that a final trial of the parties' custody dispute should take place anywhere but Texas. Part I.A. She repeatedly represented to Texas that she understood that the final trial would take place in Texas. Texas repeatedly accepted those representations, including when it allowed her to take the children to Canada in the first place and when she asked to stay there longer. She cannot change course now.

Second, Moreau consented for Texas to make a final custody determination, which is an affirmative defense under the Convention and this Court's binding precedent. *Larbie v. Larbie*, 690 F.3d 295, 309 (5th Cir. 2012), overruled in part on other grounds by *Monasky*, 589 U.S. 68. Indeed, "consent for a particular tribunal to make a final custody determination—which may be established by entry of a temporary custody order—suffices" to establish the defense. *Id.* Although the

District Court attempted to distinguish *Larbie*, it is directly on point, and it mandates the same relief for White as it did for Mr. Larbie.

Third, the United States is the children's habitual residence. As the District Court acknowledged, it is a question of first impression whether a child's habitual residence can change, while custody proceedings are ongoing, as a result of one parent's being permitted by the court to temporarily remove the child with a promise to return. Respectfully, the District Court answered the question incorrectly. Additionally, Canada never became the children's habitual residence because their time in Canada was transitory.

Fourth, Moreau failed to establish that the children's retention in Texas violated her rights of custody under Canadian law. By virtue of Canada's recognition of a Texas order, Moreau had rights pursuant to that order, and not pursuant to the general Canadian statutory scheme. The District Court committed an error of law in concluding otherwise, as well as when it found an order providing (at most) a right of access, as opposed to a right of custody, gave rise to an interest protectable under the Convention.

The Court should vacate the Return Order and render judgment in White's favor.

Finally, because the Return Order must be vacated, the Injunction must be, too. Even if it is not, it must be reversed, as it orders that the courts of Canada—a sovereign nation—"must" decide the custody dispute, even where Canada had already declined to do so. In addition, the Injunction prohibits Texas from deciding child support, even though child support is not the subject of the Convention.

## ARGUMENT

**I.   This Court should vacate the Return Order and render judgment on Moreau's Hague Petition.**

    **A. Moreau is judicially estopped from asserting that the custody trial should take place anywhere but Texas.**

Judicial estoppel is a common-law doctrine that prevents a party from assuming inconsistent positions in litigation. *In re Superior Crewboats, Inc.*, <u>374 F.3d 330, 334</u> (5th Cir. 2004). Its purpose is to protect the integrity of the judicial process by preventing parties from "playing fast and loose with the courts to suit the exigencies of self interest." *Id.* There are two required elements: (1) the position of the party to be estopped is clearly inconsistent with its previous position; and (2) a court accepted the prior position. *Occidental Petro. Corp. v. Wells*

*Fargo Bank, N.A.*, [117 F.4th 628, 638](#) (5th Cir. 2024). A third consideration is whether the party asserting the inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.*

A district court's judicial estoppel determination is reviewed for abuse of discretion. *Superior Crewboats*, [374 F.3d at 334](#) (reversing and concluding that judicial estoppel barred claim as a matter of law). However, "'[a] district court by definition abuses its discretion when it makes an error of law.'" *In re Coastal Plains, Inc.*, [179 F.3d 197, 205](#) (5th Cir. 1999) (*quoting Koon v. United States*, [518 U.S. 81, 100](#) (1996)). Further, an abuse of discretion that substantially affects a party's rights warrants reversal. *Id*; *JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*, [936 F.3d 251, 255-56](#) (5th Cir. 2019).

Here, the facts require a finding of judicial estoppel as a matter of law, as both required elements are met, and the third consideration weighs heavily in White's favor.

### 1. Moreau repeatedly represented that Final Trial should occur in Texas.

Moreau continuously litigated child-custody matters in Texas for more than six years and repeatedly asserted the position that a final

determination of all custody matters at trial ("Final Trial") should occur in Texas. Now, in this proceeding, Moreau has taken the clearly inconsistent position that Final Trial should occur in Canada. Importantly, Moreau has only taken this new position ___now___ and in the face of unfavorable rulings from Texas.

Moreau repeatedly told Texas that the move to Canada was temporary and that the Final Trial should occur in Texas:

- In August 2018, Moreau filed a SAPCR in Texas, the undisputed habitual residence of the children, affirmatively invoking the jurisdiction of Texas to resolve all matters related to custody. ROA.25-40031.2748.

- In December 2019, Moreau asked Texas for permission to move to Canada on a temporary basis. ROA.25-40031.2924:116-21. At a hearing on the issue, Moreau testified:

  > Q: So tell the Court again you're asking to what?
  >
  > A: I'm asking the Court to please allow me to move with the children to Canada.
  >
  > Q: And you understand that if the Judge grants that, it's just temporary…
  >
  > A: I understand that.

  ROA.25-40031.2926. Moreau's counsel further told the judge, "And I assure you, Your Honor, that if you order [] Ms. Moreau to come back down here to court in order to have a final trial, we would do so…." ROA.25-40031.2929.

- In August 2023, at the hearing on White's motion to have the children returned to Texas, during which Moreau asked the court for additional time to transition back to Texas her counsel stated:

  > [Moreau] does not expect to remain in Canada forever. She fully understands that this court authorized her to move to Canada on a temporary basis given [White's] circumstances, which have clearly changed; but…time is necessary to move…find a new home, to set up bedrooms.

  ROA.25-40031.3289. Moreau testified that she understood the children's residence in Canada "was still a temporary arrangement" and she "would move back if ordered to do so." ROA.25-40031.2958-59.

- In November 2023, Moreau filed a demand for a jury trial. ROA.25-40031.122.

- In January 2024, Moreau filed a demand for a pre-trial hearing and request for a trial date, resulting in Final Trial being scheduled for April 2025. ROA.25-40031.2907, 2917.

- At the July 19, 2024 hearing on Moreau's motion to reconsider Moreau testified:

  > [Moreau's Counsel]: So why are you asking the Court to maintain what has been the status quo of the children pending the final trial in April?
  >
  > …
  >
  > Moreau: I'm asking the Court to please consider [the children's] best interest. This shouldn't be about Andrew or me, it should be about the kids and what's best for them. And I'm asking for the status quo until we can have a trial.
  >
  > …

> Judge:  So I guess what I want to know is, because I kind of hear you saying hey, if you reconsider, then I'll give him visitation, but I just need to make sure that they'll come back before this trial in April, is that your position?
>
> Moreau:  Yes, Your Honor.

ROA.25-40031.351:14-25, 356:4-9.  And when Moreau's counsel was asked by the Court about whether Moreau would follow the court's order if she were required to return the children, Moreau's counsel said "We're going to follow your order, Judge. . . We've got to come back." ROA.25-40031.357.

- On August 9, 2024, in Moreau's Petition for Writ of Mandamus to the Texas Supreme Court asking the court to reverse Texas's orders, Moreau represented that "[Moreau] has submitted to the Trial Court's jurisdiction and was present when the case was set for final trial in April 2025. [Moreau]'s request is not to usurp the Trial Court's jurisdiction." ROA.25-40031.197.

Moreau's representations that the Final Trial should occur in Texas were not limited to Texas proceedings.  Moreau made similar representations to Canada:

- As early as February 2023, Moreau's Canadian counsel represented (in connection with her initial efforts to seek a non-removal order): Moreau is "making sure…that the comity between the courts is – is properly respected.  And if Texas decides that it's going to retain jurisdiction over the children so be it.  This action ends, and we don't proceed any further in British Columbia." ROA.25-40031.402, 2339-40.

- As recently as July 2024, in her response to White's application for enforcement of the Texas orders, Moreau represented that "[t]he Children should remain in BC until Texas Trial on April 28, 2025." ROA.25-40031.3107.

Without addressing the above representations, however, the District Court found that "since 2022, [Moreau] has taken the position, in both the Texas and Canadian Courts, 'that the Canadian [C]ourt is the proper court to determine the merits of the parties' custody claims . . . .'" ROA.25-40031.508, 1291, 2142-44.

As support for its conclusion, the District Court cites Moreau's July 2022 Transfer Motion and September 2022 Canada Application and concludes, from that point on, Moreau "opposed the Texas Court's jurisdiction to decide the parent-child relationship." ROA.25-40031.2120. But, as Canada noted in June 2024, "[Moreau] did not proceed to a hearing with respect to the Transfer Motion in Texas. She also took no steps to bring [her] Application forward for hearing in [Canada]," concluding "the Transfer Motion was abandoned by [Moreau]."[5] ROA.25-40031.1529, 1537. The District Court also cited, but mischaracterized, Moreau's March 2023 Motion to Dismiss the SAPCR. ROA.25-40031.1291. Moreau's Motion to Dismiss did not assert that Texas had lost jurisdiction because Canada had become the habitual

---

[5] The District Court erroneously found, without citation to any support, that Texas denied the Transfer Motion. ROA.25-40031.2120.

residence of the children. To the contrary, her motion expressly recognized that once Texas "makes a child custody determination, Texas retains exclusive jurisdiction over the determination…." ROA.25-40031.410.

If Moreau had been interested in anything more than gamesmanship, and had sincerely held the position that Final Trial should occur in Canada, she could have pursued her Transfer Motion; she could have sought appellate review of the denial of her 2023 motion to dismiss for inconvenient forum; and she could have set a hearing on her motion to dismiss filed in June 2024. She did not. ROA.25-40031.1537, 114-131. Instead, Moreau continued to seek affirmative relief from Texas, none of which was requested "subject to" or "without prejudice to" any jurisdictional argument.

The District Court clearly erred when it concluded that Moreau's position in this proceeding is _not_ clearly inconsistent with her prior positions in Texas. Although Moreau sought to retain the children's temporary residence in Canada *pending* Final Trial in Texas, she

continued to represent to both Texas and Canada, throughout 2023 and 2024, that Final Trial should occur in Texas.[6]

### 2. Texas relied on Moreau's representations.

Because it concluded that Moreau did not take "clearly inconsistent" positions, the District Court did not reach the second element of judicial estoppel—whether Moreau convinced Texas to accept her previously inconsistent position.

As a matter of law, this element is met, too. Texas repeatedly accepted Moreau's position in granting her relief, including, most notably, when it allowed her to temporarily move to Canada and when it delayed her return to Texas an additional year so that she could make proper arrangements to relocate with the children. ROA.25-40031.2773-75, 2925-30, 2953-2954, 2796.

Courts must be able to rely on the representations of parties and officers of the court. If they cannot, every family court in the country will

---

[6] The Report & Recommendation adopted by the District Court also concluded that Moreau's positions were not "clearly inconsistent" because no party had previously asserted a Hague claim. ROA.25-40031.508. But judicial estoppel does not require identity of claims; the issue is whether a party takes "clearly inconsistent" positions.

be reluctant to make temporary orders allowing one parent to relocate internationally, even temporarily, for fear that they risk a loss of their jurisdiction. Moreau's guile should not be rewarded. *Superior Crewboats*, 374 F.3d at 333.

### 3. Absent estoppel, Moreau will derive an unfair benefit and impose an unfair detriment on White.

Finally, unless Moreau is judicially estopped, she derives an unfair benefit while imposing an unfair detriment on White. Moreau, not White, is the party who has filed lawsuits in multiple fora and sought to escape Texas jurisdiction when the winds were not blowing her way. By virtue of the Return Order, Moreau has succeeded in gaming the system, securing a more sympathetic forum for herself and  evading accountability for repeatedly violating Texas orders.

White, who has lived exclusively in Texas since before the children were born, always understood the children's time in Canada to be temporary, and "worked long and hard *within* the Texas legal system," ROA.25-40031.422, now has to re-litigate custody of his children in Canada. The unfair detriment is especially harsh to White who worked within the Texas system to address and overcome allegations of family violence and substance abuse. ROA.25-40031.406-10. White will be

forced to effectively start over and re-litigate issues in Canada that have already been resolved after years of evidentiary hearings in Texas.

### 4. Estopping Moreau furthers the Convention's goals.

Finally, the District Court concluded that, even if elements of judicial estoppel were satisfied, it would still exercise its discretion and decline to apply the exception. ROA.25-40031.2144. But a "motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Golan v. Saada*, 596 U.S. 666, 679 (2022).

Here, the District Court's judgment was not guided by sound legal principles. The court reasoned that applying judicial estoppel "would undermine the Convention's goal that decisions regarding custody rights should be made in the country of habitual residence—here, Canada." ROA.25-40031.2144. But that is only one of the Convention's goals.

"The Convention's primary aims are to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'" *Galaviz*, 95 F.4th at 251. The "pre-abduction status quo" was that Texas had asserted exclusive jurisdiction over the custody dispute, and Canada had declined jurisdiction in favor of Texas, noting

30

that "Texas is the appropriate jurisdiction to make decisions for this family." ROA.25-40031.3033, 3299-3302. Absent estoppel, this status quo is upended, not preserved. Moreover, in doing so, it erodes another of the Convention's purposes: "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, art. 1.

By definition, Moreau is "playing fast and loose with the courts to suit the exigencies of [her own] self interest." *In re Superior Crewboats*, 374 F.3d at 334.[7]

## B. Moreau consented to Texas's jurisdiction.

White should also prevail because, as a matter of law, Moreau's actions give rise to a consent defense under this Court's precedent in *Larbie v. Larbie*, 690 F.3d 295 (5th Cir. 2012), overruled in part on other

---

[7] The Report and Recommendation references Article 17 of the Convention, which provides that "[t]he sole fact that a decision relating to custody has been given or is entitled to recognition in the Requested State shall not be a ground for refusing to return a child under this Convention." ROA.25-40031.508. White does not rely on "the sole fact" that "a decision relating to custody" has been made in Texas. Rather, he relies on the fact that the US was the habitual residence at the time Moreau commenced the Texas proceedings, and on Moreau's many representations since and Texas's reliance on those representations— that the custody dispute would be settled in Texas.

grounds by *Monasky*, <u>589 U.S. 68</u>. In *Larbie*, this Court held that "consent for a particular tribunal to make a final custody determination—which may be established by entry of a temporary custody order—suffices" to establish the defense. *Id.* at 309. Under forum-shopping circumstances strikingly similar to those here, this Court found that the mother had "agreed to the Texas court's final resolution of the custody dispute," which "defeated" her claim of wrongful retention as a matter of law. *Id.*[8] *Larbie* controls here—the District Court's distinctions notwithstanding.

As respondent, White bore the burden of establishing the consent defense by a preponderance of the evidence. Convention, art. 13(a); <u>22 U.S.C. § 9003(e)(2)(B)</u>. He did so as a matter of law. Although the District Court's decision not to apply the defense is reviewable for abuse of discretion, that discretion must be guided by sound legal principles and "discretion is not whim." *See Golan*, <u>596 U.S. at 678-79</u>; *Garcia v. Pinelo*, <u>808 F.3d 1158, 1167</u> (7th Cir. 2015). This Court should do as it did in

---

[8] After determining the father had proved the consent defense as a matter of law, the court also concluded, under a *de novo* review, that Texas was the child's habitual residence in an analysis that prioritized the parents' shared intent over other factors. <u>690 F.3d at 310-12</u>. That emphasis and standard of review have been overruled, *Smith v. Smith*, <u>976 F.3d 558, 561</u> n.1 (5th Cir. 2020), but *Larbie*'s consent analysis remains good law.

*Larbie*: vacate the Return Order and render judgment in White's favor.

690 F.3d at 312.

> **1. In Larbie, as here, the mother resorted to a Hague petition after numerous instances of consenting to Texas jurisdiction.**

As in most Hague cases, the facts in *Larbie* are complex. 690 F.3d at 298-304. The *Larbie* case began, like this one, with a divorce proceeding in Texas state court. *Id*. at 298. As here, both parties sought affirmative relief from Texas. *Id*. at 298-99. As here, the mother obtained permission from Texas to designate the child's primary residence without geographic restriction, and she moved with the child to a foreign country. *Id*. at 299-301. The understanding, however, was always that the final custody trial would take place in Texas. *Id*. at 299-304. After trial, the father obtained the right to designate the primary residence, and as a result he took possession of the child in Texas. *Id*. at 304. The mother appealed and, several months later, filed a motion to modify the final decree in which she represented that she had "always subjected herself to the jurisdiction of [the Texas court]." *Id*. One month after filing that motion, the mother filed a Hague petition in federal court, arguing that the child was a habitual resident of the country in which she and the

child had lived pending the trial. *Id.* at 305. The District Court granted her petition for return. *Id.*

This Court vacated and rendered judgment in the father's favor, holding there was "no doubt that [the mother] gave 'clear and unequivocal' consent for Texas to make a final custody determination." *Id.* at 309. The Court explained that "the district court's order has the effect of undoing the custody arrangement ordered by the Texas court of competent jurisdiction—before which both parties participated and sought relief—in favor of relitigating custody before tribunals that, until this proceeding, [the mother] never argued had authority over the matter." *Id.* at 308.

### 2. The District Court's attempts to distinguish *Larbie* fail.

The District Court acknowledged that "*some* facts from *Larbie* are similar to the case at bar" but found that the "greater weight of facts" deviated. ROA.25-40031.2138. None of the District Court's distinctions save Moreau from application of the consent defense.

First, the District Court focused on the fact that *Larbie* involved a final custody order, while the proceedings here are still ongoing. ROA.25-40031.2138. But *Larbie* did not hold that being subject to a final custody

34

order constituted consent. It held that, "consent for a particular tribunal *to make* a final custody determination—*which may be established by entry of a temporary custody order*—suffices to establish" the consent defense. 690 F.3d at 309 (emphasis added). In making this point, this Court emphasized that a case need not already have proceeded to trial to show consent. *Id.*

The final order was only one fact among many in the Court's analysis. *Id.* This Court also relied on other evidence of the mother's consent—including her recognition of and general compliance with temporary Texas orders, appeal of the final decree, and motion to modify the decree "based on her consistent obedience to the court's orders and submission to its jurisdiction"—and acknowledged that the final decree was not the "sole" or "dispositive" fact leading to its holding. *Id.* at 309, 310 n.16. Indeed, if a final order were required, the Court would not have stated that consent could "be established by entry of a temporary custody order." *Id.*

Here, of course, Moreau's consent to Texas's jurisdiction goes well beyond entry of a temporary custody order. *See* Part I.A.1.[9] She, too, sought, recognized and benefited from Texas orders; sought appellate review of the merits of those orders; and repeatedly represented she would appear for trial in Texas. *Id.* Like Evelyn Larbie, it was only after Texas modified the parties' rights (by giving father the right to designate the children's primary residence in the US) that she filed her Hague petition. *See id.* at 304. Both petitioners engaged in forum shopping—the antithesis of the Convention.

Next, the District Court focused on Moreau's having objected to Texas's jurisdiction, pointing to three filings as a revocation of consent. ROA.25-40031.2139 (citing to Dkts. 17-21, 17-16, and 17-11, at ROA.25-40031.437, 256, and 239). But Moreau abandoned the first attempt, failed to seek appellate review of the denial of her second, and never set her third for a hearing. ROA.25-40031.1537, 114-131. And she made representations *after* those filings that she continued to consent to

---

[9] Moreau's actions also go well beyond the facts in the District Court's hypothetical. ROA.25-40031.2139. Moreau did not simply file suit and obtain a single temporary order. She actively litigated in Texas for *six years* before filing her Hague petition, making numerous affirmative representations about trial taking place in Texas along the way.

Texas's jurisdiction—including an express representation to the Texas Supreme Court shortly before she filed her Hague petition that she "has submitted to the Trial Court's jurisdiction" and did not seek to "usurp" it. ROA.25-40031.197, 1125, 2977, 3107; *see also* Part I.A.1.[10] Although Moreau initiated a family proceeding in Canada, ROA.25-40031.2141, by her own representations the intent of that proceeding was to "seek[] a non-removal order to protect the status quo" and have the Texas orders recognized in Canada, ROA.25-40031.13-14, 2938—further demonstrating her consent.

The District Court dismissed Moreau's actions by stating that "Moreau cannot be faulted for complying with orders in the Texas Court—her failure to comply would likely lead to sanctions." ROA.25-40031.2140. But compliance with orders is different from repeatedly and expressly submitting to Texas's jurisdiction. Moreau's statement in August 2023 that she recognized Canada was a "temporary arrangement" and would return to Texas if ordered was made for the

---

[10] The District Court also dismissed the fact that Moreau initiated divorce proceedings, stating that at the time there was no other court that could hear the divorce case. ROA.25-40031.2139. When the mother in *Larbie* filed her counterpetition in that divorce case, "she also specified that no other court had jurisdiction over" the child. 690 F.3d at 298-99.

express purpose of persuading Texas to let her remain in Canada a little longer, not to avoid sanctions. And Moreau was under no compulsion to tell the Texas Supreme Court that she was not trying to "usurp" Texas's jurisdiction. *See* ROA.25-40031.197. She said it because she thought it would get her what she wanted—a reversal of temporary orders requiring the children to reside in Texas. ROA.25-40031.176.

Finally, the District Court argued that applying the same logic to White's actions in Canada would lead to the conclusion that he consented to Canada's jurisdiction to decide custody. ROA.25-40031.2141. Quite the opposite is true. White never attorned to Canada's jurisdiction, and he only asked Canada to: (1) stay the case Moreau filed in Canada and vacate the orders entered in that case; (2) find that Canada did not have jurisdiction beyond recognition and enforcement of the orders of Texas; and (3) recognize and enforce the orders of Texas, which Moreau violated by keeping the children in Canada beyond July 1, 2024. ROA.25-40031.832, 861-62, 903-05, 1791, 1793, 1799, 1072. White took no action in Canada that could be deemed consent that Canada had jurisdiction to do anything beyond recognize and enforce Texas's orders.

As a matter of law, Moreau consented to the jurisdiction of Texas, the District Court abused its discretion in refusing to apply the defense, and her claim of wrongful retention is defeated.

### C. The United States is the children's habitual residence.

White must also prevail because the District Court clearly erred in finding that Canada was the children's habitual residence.

The Court reviews the District Court's determination of habitual residence for clear error, but under a totality-of-the-circumstances analysis. *Smith v. Smith*, 976 F.3d 558, 561 (5th Cir. 2020). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Harm v. Lake-Harm*, 16 F.4th 450, 455 (5th Cir. 2021) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

It is Moreau's burden to demonstrate by a preponderance of the evidence that the children's habitual residence at the time of their retention was Canada. 22 U.S.C. § 9003 (e)(1)(A). But there is only one permissible view of the facts here:— the children's residence continued

to be Texas while they were temporarily living in Canada. Accordingly, the District Court clearly erred in finding Moreau met her burden.

> **1. As a matter of law, the children's habitual residence could not change while they were temporarily residing outside the US with the permission of Texas, mid-custody proceeding.**

The facts of this case differ materially from the facts of existing Hague precedent. Here, Moreau initiated child custody proceedings in Texas—undisputedly the only court that could have had jurisdiction over the custody claims at the time of filing. ROA.25-40031.2748. Moreau sought permission from Texas to move with the children to Canada temporarily, while the proceeding was ongoing. ROA.25-40031.2924. White opposed Moreau's request. ROA.25-40013.2923, 2930. Despite White's objection, Texas issued an order allowing Moreau to do so based on Moreau's assurance to Texas that the move was only temporary, that she would return if ordered to do so, and that she would return for trial in Texas. ROA.25-40031.2773-2775, 2925-29.

Subsequently, Texas held a hearing in August 2023 on White's request to have the children relocated to Texas. ROA.25-40031.2946, 2953. At that hearing, Moreau asked Texas for a year to effectuate the move back to Texas, and Texas allowed her that time, setting July 1, 2024

as the date from which the children's residence would be restricted to two counties in Texas. ROA.25-40031.2953-2954, 2959, 2796. In doing so, the Court again relied on Moreau's representations that Canada was a "temporary arrangement" and she would "return if ordered to do so." ROA.25-40031.2958-59.   But after a year elapsed, Moreau refused to return the children to Texas and asked Texas to reconsider and allow her to keep the children in Canada until trial. ROA.25-40031.2961-2978, 2811-2818. Texas found Moreau was in violation of its orders, declined to reconsider the geographic restriction on the children's residence, and granted White the exclusive right to designate the children's primary residence within the two Texas counties. ROA.25-40031.2811-2818.

When Texas denied Moreau's attempts to further delay the children's return to Texas, Moreau filed petitions for writs of mandamus with both the Dallas Court of Appeals and the Texas Supreme Court, asking the courts to vacate the orders requiring the children to reside in Texas, both of which were denied. ROA.25-40031.168-69, 199-200. Six weeks after she lost at the Texas Supreme Court, she filed her Hague Petition. At the time her Hague Petition was filed in September 2024, the

Texas case was set for final jury trial to begin on April 28, 2025. ROA.25-40031.2917.

This case presents an issue of first impression—no case has addressed whether a child's habitual residence can change, while child custody proceedings are ongoing, as a result of one parent being permitted by the court to remove the child from the country temporarily with a promise to return. As the Supreme Court has explained, "[t]he Convention's return requirement is a 'provisional' remedy that fixes the forum for custody proceedings." *Monasky*, 589 U.S. at 72 . "Upon the child's return, the custody adjudication will proceed in that forum." *Id*. Indeed, this Court has framed Hague cases as essentially "call[ing] on [the Court] to decide which country has jurisdiction over an international child-custody dispute." *Harm v. Lake-Harm*, 16 F.4th 450, 451 (5th Cir. 2021).

Accordingly, if habitual residence can change under these circumstances, it would lead to the problematic result that the forum that was indisputably the child's habitual residence at the time the proceeding was initiated and before which the parties had been actively and continuously litigating loses jurisdiction over the proceeding before it can

be resolved—solely by virtue of the court allowing the temporary relocation, expressly permitted on the representation the parent would return for trial. Here, the District Court's decision that the children's habitual residence is Canada wrests jurisdiction away from Texas, which was indisputably the habitual residence of the children at the time the proceeding was filed and continuing to exercise jurisdiction to decide custody issues at the time the Hague petition was filed, and places it in the hands of Canada. The result is particularly troubling here as Canada had already declined to exercise jurisdiction in favor of Texas. ROA.25-40031.3302.

The District Court acknowledged this heretofore unprecedented situation below:

> One thing that the Court is struggling with is this idea that [Moreau] initiated proceedings in the State Court. She got permission from the State Court under temporary orders to move the children to Canada. The question then becomes—and I can't find any case law on this, so I welcome any insight from the attorneys—is can Canada ever become a habitual residence of the children when they are only there because the State Court gave permission and something she participated in? . . . [C]an [Moreau], as the Petitioner, just decide, "Well I'm going to stay there permanently now and too bad about the Texas Court," because she initiated those proceedings?

ROA.25-40031.2602-2603; *see also* ROA.25-40031.2655 (District Court acknowledging "we're treading new water here.").

As a matter of law, the Court should hold that she cannot. The Court should do so because the result is counter to a fundamental aim of the Convention—to prevent parents from crossing borders with their children in search of a more favorable forum. *Berezowsky,* 765 F.3d at 472. It subverts one of the stated purposes of the Convention, which is to ensure that rights of custody and access under the law of one contracting state are effectively respected in other contracting states. Convention, art. 1. Here, the Return Order respects the decisions of neither Texas nor Canada.

This Court has vehemently opposed this kind of action, albeit in a case decided under the standard prior to the Supreme Court's decision in *Monasky*; *Berezowsky v. Ojeda*, 765 F.3d 456 (5th Cir. 2014). While *Berezowsky's* focus on shared parental intent to determine habitual residence is no longer good law, the portion of the *Berezowsky* opinion condemning the mother's actions for forum shopping remains intact. Moreau, like the mother in *Berezowsky*, is attempting to use the Hague Convention to accomplish the exact result it is designed to prevent.

The procedural history in *Berezowsky* rivals the complexity of this case. A legal battle over the child's custody was fought for years in both Texas and Mexico. 765 F.3d at 459. Ultimately, a Texas jury awarded the mother and father joint managing conservatorship of the child and awarded the father the exclusive right to determine the child's residence within three areas in Mexico. *Id.* at 460. The father and child moved to Mexico, and the mother followed. *Id.* The mother then began legal proceedings in Mexico seeking to terminate the father's parental rights. *Id.* at 461.

The father went back to Texas, which had resolved the custody issues and sought enforcement of the final judgment. *Id.* at 462. As a result, Texas appointed the father sole managing conservator of the child, but the mother continued to maintain possession of the child in Mexico, in contravention of the Texas orders. *Id.* at 462-63.

When the Mexico appeals court determined that the Mexico trial court did not have jurisdiction over the mother's petition, the mother, who was still in possession of the child, sought custody from a different Mexico trial court. *Id.* at 463. Meanwhile, a separate Mexico court, on the father's motion, recognized and enforced the Texas orders and ordered

the mother to return the child to the father. *Id*. When the father took the child to the United States, the mother sought additional orders from the Mexican courts and filed a Hague petition in federal district court in Texas for the child's return to Mexico. *Id*. at 464.

The district court found that the child's habitual residence was Mexico, which this Court reversed. *Id*. The Court explained that "[a]lthough [the mother] comes before this court seeking relief under the Hague Convention, the procedural history in this case demonstrates the extent to which she has ignored court orders and sought 'friendlier forums' to adjudicate this dispute." *Id*. at 465. "The Hague Convention was designed to *prevent* this exact kind of forum-shopping in child custody cases. To hold that a parent may unilaterally establish their child's habitual residence by taking actions actually designed to keep the child in a favorable forum, while thwarting valid court orders, would undermine that purpose." *Id*. at 472.

For the same reason, Moreau's actions here cannot be sanctioned and the District Court's decision cannot stand. Moreau received permission from Texas to move her children temporarily to Canada, over White's objection, and when Texas required her to return the children,

she drew the move out for as long as possible and then simply refused to follow Texas's orders. Instead, she sought a different result in Canada, a friendlier forum. Here, the District Court's decision on habitual residence endorses and rewards Moreau's open defiance of Texas's orders and blatant forum shopping.

The District Court's hypothetical—that if habitual residence cannot change mid-proceeding, a parent could be haled back to Texas court after living abroad with a child for ten years while a child custody case sat dormant—is a straw man argument. ROA.25-40031.2139. It is undisputed that the parties never stopped actively litigating custody in Texas and in fact, a jury trial was set in April 2025, a fact the District Court knew when it concluded the children's habitual residence was in Canada. ROA.25-40031.2917.

Affirming the District Court's decision here would set a worrisome precedent. The inherent problem with allowing a child's habitual residence to change as a result of a court-sanctioned temporary move out of the country, mid-proceeding, is that the left-behind parent and the court overseeing the proceeding have no way to prevent the child's habitual residence from changing. Indeed, short of never permitting a

parent to move, even temporarily, with a child outside the country, a court has no way to ensure that allowing such a move will not deprive it of jurisdiction.

In sum, the habitual residence determination cannot be permitted to be twisted to bring about the exact result the Hague was created to prevent. Accordingly, in this case of first impression, White asks that the Court hold that the District Court erred as a matter of law in finding that the children's habitual residence became Canada because of their temporary relocation there during ongoing, active custody proceedings in a proper forum.

### 2. Additionally, the Court clearly erred in finding Canada is the children's habitual residence under the totality of the circumstances here.

Even if the Court declines to resolve this issue as a matter of law, the Court should reverse the finding under the totality of the circumstances here. The Supreme Court held in *Monasky* that "a child's habitual residence depends on the totality of the circumstances specific to the case." *Monasky*, 589 U.S. at 76. It also held that a child's "residence in a particular country can be deemed 'habitual' . . . ***only when*** her residence there is more than transitory." *Id*. (emphasis added).

The Court reviews the District Court's determination of habitual residence for clear error, but under a totality-of-the-circumstances analysis. *Smith*, 976 F.3d at 561. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Harm v. Lake-Harm*, 16 F.4th 450, 455 (5th Cir. 2021) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

It is Moreau's burden, as the petitioner, to demonstrate by a preponderance of the evidence that the children's habitual residence at the time of their retention was Canada. 22 U.S.C. § 9003 (e)(1)(A). But there is only one permissible view of the facts here—that the children's residence continued to be Texas while they were temporarily living in Canada. Accordingly, the District Court clearly erred in finding Moreau met her burden.

The Court has decided two cases on habitual residence since the Supreme Court's decision in *Monasky*: *Smith*, 976 F.3d 558 and *Lake-Harm*, 16 F.4th 450. Both decisions are instructive in demonstrating that the District Court clearly erred here. In both, this Court affirmed findings that children's habitual residences did not change from the U.S.

to another country because the children's residence in the other country was merely temporary or "transitory." 976 F.3d at 563; 16 F.4th at 454-55. This Court came to this conclusion despite better evidence of permanence than exists here—indeed, in both cases the entire families uprooted their lives in the U.S. to move abroad. 976 F.3d at 560; 16 F.4th at 452.

Here, the District Court clearly erred in entirely disregarding the temporary nature of the children's relocation to Canada and allowing Moreau's unilateral decision that the temporary move "became permanent at some point" to rule the day. *See, e.g. De La Rosa v. Alonso*, No. 4:24-CV-00059-AGD, 2024 U.S. Dist. LEXIS 197753, at *7 (E.D. Tex. 2024) ("Importantly, one parent's unilateral removal of the child from one country cannot establish a new habitual residence for the child.").

Moreau was only permitted to move the children to Canada by temporary order based on her representation that the move was temporary and she would return if ordered to do so and for trial. ROA.25-40031.2773-2775, 2925, 2926, 2927-29. As addressed in Parts I.A.1 and I.B.2 above, Moreau made repeated representations that she understood

the move was temporary and trial in Texas would determine the parties' custody rights.

In counting the length of time the children were in Canada as evidence they became habitual residents there, the District Court sanctioned Moreau's disingenuous request to Texas that she needed another year, from 2023 to 2024, to make the necessary arrangements to return to Texas. ROA.25-40031.2953-2954, 2959, 2796. The children would not have been living in Canada, going to school in Canada, or seeing doctors in Canada for yet another year if Moreau had not convinced Texas to let her keep them there another year on the promise she would return.

Indeed, when that year ended, Moreau refused to send the children to Texas for White's period of possession, despite White having exercised his periods of possession in Texas regularly and without issue over the year Moreau was supposed to have spent figuring out her and the children's move back, which Moreau admits. ROA.25-40031.2325-28; ROA.25-40031.344-45. Moreau refused because she exhausted her options to convince Texas to further extend the temporary orders allowing the children to live in Canada, and she wanted the children to

51

remain outside Texas's territorial jurisdiction when she ceased complying with Texas's orders and within the territorial jurisdiction of Canada, through which she could try to get another bite at the apple to keep the children in Canada until the case could be tried.

Importantly, the District Court clearly erred when it found the children had been well settled in Canada since 2019 and when it found that Canada was their "entire world." ROA.25-40031.2131, 2132. The children's father and extended family are in the U.S., and they have rich lives full of friends, activities, and support in Texas. ROA.25-40031.2441-42; Respondent's Trial Exs. R-49 and R-50. Indeed, both children expressed to the guardian ad litem that their favorite thing about Texas is that they get to see both of their parents when they are there. ROA.25-40364.2804-05. The guardian ad litem found "a clear preference by both children to see both parents regularly however that can be accomplished." ROA.25-40364.2805.[11] Thus, in many ways, Texas is the only place they have experienced a world that is actually complete.

---

[11] The report is part of the record in case no. 25-40031 but was not included in that record because it was sealed. A copy is included in the record for case no. 25-40364.

Considering the totality of the circumstances here, there is only one permissible conclusion—that the children were habitual residents of the United States, not Canada, at the time White retained them in Texas. Accordingly, the District Court clearly erred, and the court should reverse and render judgment for White.

### D. Alternatively, Moreau failed to establish that White's retention of the children in Texas breached her rights of custody under Canadian law.

It was Moreau's burden to prove, by a preponderance of the evidence, the second element of her Hague petition: that White's retention of the children in Texas was in "breach of [her] *rights of custody*" under Canadian law. *See* Convention, art. 3(a) (emphasis added); 22 U.S.C. § 9003(e)(1)(A). She failed to do so.

Questions of foreign law, including those regarding what custody rights a parent may possess in another country, are reviewed de novo. *White v. White*, 718 F.3d 300, 303 (4th Cir. 2013). In assessing foreign law for purposes of the Convention, the Court may take direct notice of Canadian law "without recourse to the specific procedures which would otherwise be applicable." Convention, art. 14.

The Convention distinguishes between "rights of *custody*" and "rights of *access*." *See* Convention, art. 5. "Rights of custody" under the Convention "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;" they are akin to "conservatorship" in Texas and "parental responsibilities" in Canada (per BCFLA Section 41). Convention, art. 5(a); ROA.25-40031.1532, 3145-7, 1439-42. "Rights of access" under the Convention "include the right to take a child for a limited period of time to a place other than the child's habitual residence" and are akin to "possession" under Texas law and "parenting time" under Canadian law (per BCFLA Section 42). Convention, art. 5(b); ROA.25-40031.1532, 3146. All cited provisions of the BCFLA are contained in the record at ROA.25-40031.3175-3195.

### 1. Moreau's rights of custody derived from a recognized order, not from statute.

#### a. Any determination regarding whether Moreau's "rights of custody" were breached must necessarily begin with a determination of what "rights of custody" she held.

Under Canadian law, parents are generally "guardians" who jointly hold all "parental responsibilities," or rights of custody, by statute.

ROA.25-40031.1440, 3146-47 (citing BCFLA §§39-40). However, Canadian law also provides that an agreement or order can allocate parental responsibilities differently. ROA.25-40031.1441, 3147 (citing BCFLA § 40(2)). Any guardian whose parental responsibilities have been reallocated by court order does not retain their original statutory rights. ROA.25-40031.3147.

To the extent that "parental responsibilities" are allocated via orders made by a domestic court, those orders are made pursuant to section 45 of the BCFLA. ROA.25-40031.3147. However, Canadian law also provides for the recognition of a foreign (or "extraprovincial") order pursuant to section 75 of the BCFLA. ROA.25-40031.3192. "On recognition by a court…an extraprovincial order *has the same effect*, and *may be* enforced, as if it were an order made under section 45." ROA.25-40031.3192 (emphasis added).

> **b.    The parties' rights of custody under Canadian law were allocated, and held, pursuant to the recognized August 2023 Texas Order.**

On June 28, 2024, Canada declined to exercise any jurisdiction it may have had to make domestic orders regarding rights of custody. ROA.25-40031.1550-1554 (Tucker Order). Instead, on July 15, 2024,

Canada (upon White's application) recognized the August 2023 Texas Order. ROA.25-40031.1521.

The August 2023 Texas Order modified the parties' custody rights by, *inter alia*, restricting their choices regarding the children's residence and school from and after July 1, 2024. ROA.25-40031.2778. The August 2023 Texas Order also modified the parties' access rights by imposing, *inter alia*, specified terms regarding (i) when each party would have possession of the children and (ii) where and how exchanges of the children would take place. ROA.25-40031.2778-9.

When Canada recognized the August 2023 Texas Order pursuant to BCFLA § 75, its terms had the same effect as if they had been set forth in an order made domestically under BCFLA § 45. ROA.25-40031.3192. Accordingly, pursuant to BCFLA § 40(2), the parties' custody rights, or "parental responsibilities," were reallocated by court order such that neither party retained their original statutory rights. ROA.25-40031.3147. The District Court clearly erred when it found that as of August 2, 2024, "none of the Texas Court's orders were operative in Canada because a Canadian court had not yet recognized the Texas Court's orders." ROA.25-40031.2126. It further erred in concluding that

56

Moreau's custody rights derived from section 41 of the FLA and not from the recognized Texas Order. ROA.25-40031.2133.[12]

Although Canada recognized the August 2023 Texas Order, giving it the effect of an order under Canadian law, it also "superseded" certain terms to give Moreau time to get a ruling from Texas on her claim that circumstances had changed. ROA.25-40031.1522. Much like a supersedeas order issued under Texas law, the supersession delayed enforcement of certain terms but did not result in the recognition of those terms being changed, suspended, or terminated. ROA.25-40031.3150, 3152. It did not change the terms of the recognized order in a manner that reallocated custody rights to Moreau. *Id.* Put differently, the parties held rights of custody pursuant to the recognized order, even though enforcement of some of those rights had been delayed.

Moreau failed to accurately specify which "rights of custody" she held and the source from which she obtained those rights and thus failed to meet her burden on the second element. On that point alone, the Court should reverse and render judgment for White.

---

[12] White does not dispute that Moreau had "rights of custody" under Canadian law. ROA.25-40031.2133. But that is a far cry from defining what those rights are, and it is not an admission of breach.

## 2. The August 2, 2024 Canadian order did not confer custody rights on Moreau.

On August 2, 2024, Canada commenced a hearing regarding enforcement of the recognized August 2023 Texas Order. White's counsel argued that Canada, having already recognized Texas orders regarding White's summer parenting time and the children's schooling (scheduled to begin in Texas on August 8, 2024), should immediately enforce those terms. ROA.25-40031.1754:16-40, 1769:19-38. Moreau's counsel requested an adjournment, asserting that enforcement of the recognized order was "not pressing or urgent." ROA.25-40031.1708:32-47. He also argued that if the children started school in Texas, Moreau's "appeal in BC [of the Tucker Order] and her intended appeal in Texas are moot."[13] ROA.25-40031.1774:23-31. In response, White's counsel committed that the children would be transferred back to Moreau, with the understanding Moreau intended to exercise her parenting time in Canada. ROA.25-40031.1771:39-1772:3.

---

[13] Despite her arguments about mootness, Moreau did not pursue an appeal of the Tucker Order, electing instead to seek a writ of mandamus from the Supreme Court of Texas. ROA.25-40031.170. An intention to pursue new rights of custody is, of course, quite different from obtaining them.

At the end of the August 2 hearing, Canada crafted an order consistent with the modified "rights of access" set forth in the recognized Texas order and adjourning the hearing.[14] The order required Moreau to transfer the children to White's designee on August 4, 2024 (in Canada, for the purpose of travel to Texas), and for White to transfer the children to Moreau's designee on August 29, 2024 (in Texas, for the purpose of travel to Canada). ROA.25-40031.3489.

The August 2 order did not give Moreau any new custody rights permitting her to retain the children's residence in Canada. In fact, Canada was clear that the only thing that would "definitely" be happening in Canada was "the kids are having a long weekend." ROA.25-40031.1798:5-9. At most, the August 2 order acknowledged access rights Moreau already had through recognition of the August 2023 Texas Order.

---

[14] Among other things, these modified "rights of access" provided that "[b]eginning August 1, 2024, Father has possession of the children per Texas Family Code sections 153.311-153.317 with all elections … Mother has the right to possession of the children at all times not specifically awarded to Father." ROA.25-40031.2779. Under those sections of the Texas Family Code, White had the right to extended summer possession, and Moreau had the right to possession on other days, including August 29, 2024. Tex. Fam. Code §§ 153.311-15; *see also* Tex. Fam. Code § 153.36(6) (providing that either party may designate a competent adult to pick up and return the children).

Moreau never adequately designated a person to whom White should transfer the children. On August 30, 2024, Moreau went back to Canada. There, she asserted (ex parte) that "[White] has not returned the Children" and obtained a September 11, 2024 order declaring White in breach of the August 2 order.  ROA.25-40031.3494:39-43, 574, 1459.[15]

The District Court relied on this finding of breach as additional support for its determination that Moreau's *rights of custody* were breached. ROA.25-40031.3067. But that breach was, at most, a breach of Moreau's rights of access, which does not give rise to a return remedy under the Hague. *Compare* Convention, art. 3 (finding of wrongful removal requires breach of rights of custody); *with* art. 21 (setting forth other remedies for securing effective rights of access). The Return Order must be vacated for this additional reason.

---

[15] White has challenged whether he breached the August 2 Order, asserting (i) that his responsibility was to transfer the children in Texas (not Canada), and (ii) that Moreau had failed to identify a designee who could accept the transfer in Texas. Canada has since re-opened the issue of whether White breached the order.

## II.    The Injunction should be vacated.

Because the Return Order is infirm and must be vacated, the Injunction issued to "effectuate" that judgment must be vacated, too. ROA.25-0364.3066,75.

The Court reviews decisions to grant injunctive relief for abuse of discretion. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996). "Under this deferential standard, findings of fact are upheld unless clearly erroneous, whereas legal conclusions are subject to broad review and will be reversed if incorrect." *Id.* (internal quotation marks omitted).

### A. The Injunction improperly mandates conduct by the tribunal of a foreign sovereign nation, ignoring that Canada had affirmatively declined jurisdiction.

While federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits, they do not have any power to order a foreign nation to do or decline to do anything in actions pending before their courts. *See, e.g., Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996) (addressing anti-suit injunction preventing litigant in the action from prosecuting a mirror suit in Japan). "[A] sovereign country has the competence to determine its own jurisdiction and grant the kinds of relief it deems appropriate." *Karaha Bodas Co. v.*

*Negara*, 335 F.3d 357, 372-73 (5th Cir. 2003). And yet in both the Findings of Fact and the Injunction the District Court dictated that "[t]he Canadian court must decide the custody dispute" and "the Canadian court shall decided [sic] the child custody suit." ROA.25-40031.2148; ROA.25-40364.3075. These mandates were improper.

Not only did the mandates to Canada impede on its sovereign jurisdiction, but they interfered with decisions Canada had already made. As set forth in detail above, before Moreau filed her Hague petition, Canada had declined to exercise jurisdiction over the parties' custody dispute, imposed a stay on custody proceedings, and determined it had no power to issue its own custody orders. Part I.D.1. Instead, it had limited itself to recognizing (or not) and enforcing (or not) the Texas orders. *Id.* The District Court's mandates made no allowance for the possibility that Canada would deny Moreau's request and continue to decline to exercise jurisdiction over the children. Nor did it allow for the possibility that Canada would return the children to Texas.

Indeed, Canada grappled with the practical effect of the District Court's dictation that it "must decide":

The Court: . . . so when he says "the Canadian courts must," I mean, isn't he really, saying the U.S. courts must not? Or—because he can't really say the Canadian court must.

. . .

[Counsel]: … I don't know what would happen if [Canada] said, "We don't want it; you take it."

The Court: Yeah, yeah.

[Counsel]: And they're like, "Hey, we already told you we don't want it." I don't know what happens.

The Court: Yeah. Well, I guess that's –that would be the prospect. It could happen if I don't accept.

ROA.25-40364.1789. Canada had the authority to determine its own jurisdiction and whether to exercise it, and the District Court abused its discretion in making those decisions for Canada.

Thus, the Injunction's inclusion of the order "that the Canadian Court shall decided [sic] the child custody dispute" and statement that "[i]f the Fifth Circuit reverses the Court, *then and only then* will the child custody dispute return to the Texas State Court" are improper because the District Court exceeded its authority in ordering what the courts of a sovereign nation must do. ROA.25-40364.3075 (emphasis in original).

**B. The Injunction erroneously includes child support in the matters the district court prohibited Texas from deciding.**

Filing a notice of appeal "divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. Of Orthopedic Surgeons*, 470 U.S. 373, 379 (1985); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). While the District Court had the inherent power to enforce its judgment, it went beyond that here by substantively modifying the Return Order in the Injunction after White's appeal was filed.

In the Findings, the District Court ordered that the "Canadian court must decide the custody dispute" but did not define the scope of what the "custody dispute" encompassed. ROA.25-40031.2148. In the Injunction, the District Court defined "Child Custody Dispute" to include "all conservatorship, possession, access, custody, parenting time, child support, and visitation matters" pending between the parties. ROA.25-40364.3074. In ordering that all those matters must be decided by Canada, the District Court substantively modified the scope of its Final Judgment. Worse still, the Injunction repeatedly refers to its Judgment as (i) as a determination that Canada must decide the child custody

dispute "and all matters pertaining to the children," and (ii) as precluding White from litigating the child custody dispute and all matters pertaining to it in Texas. In each case, the District Court lacked jurisdiction to expand the scope of its Judgment because White had filed his notice of appeal of the Return Order months earlier. ROA.25-40031.2151.

## CONCLUSION AND PRAYER

For the foregoing reasons, White requests that the Court:

- Reverse and vacate the Findings of Fact and Conclusions of Law and the Final Judgment signed on January 17, 2025;

- Render judgment that the children should not have been returned and that Texas is the forum in which the parties' custody dispute must be resolved;

- Render judgment that the children must be immediately returned to the custody and possession of White in the United States, with directions that Moreau turn the children over to White by no later than 3 p.m. CST ten days after this order is signed and filed; and

- Grant him all other relief to which he may be justly entitled.

Respectfully submitted,

**WEISBART SPRINGER STORM
  HATCHITT, LLP**
212 Lavaca Street, Suite 200
Austin, Texas  78701
512.652.5780
512.682.2074 fax

By: */s/ Geoffrey D. Weisbart*
    Geoffrey D. Weisbart
    Texas Bar No. 21102645
    gweisbart@weisbartspringer.com
    Julie A. Springer
    Texas Bar No. 18966770
    jspringer@weisbartspringer.com
    Sara E. Janes
    Texas Bar No. 24056551
    sjanes@weisbartspringer.com

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☒ ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants)

on this 18th day of July, 2025, to wit:

Stephen J. Cullen
Kelly A. Powers
MILES & STOCKBRIDGE P.C.
1201 Pennsylvania Ave., N.W.
Suite 900
Washington, D.C. 20004
202.465.8374
410.773.1900 fax
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

**ATTORNEYS FOR APPELLEE**

L. Kirstine Rogers
L. KIRSTINE ROGERS, PLLC
5345 Towne Square Drive,
Suite 140
Plano, Texas 75024
214.244.0237
krogers@lkrpllc.com

**GUARDIAN AD LITEM**

*/s/ Geoffrey D. Weisbart*
Geoffrey D. Weisbart

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

1.      This brief complies with the type-volume limitation of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u> because it contains 12,894 words, excluding the parts of the brief exempted by <u>Federal Rule of Appellate Procedure 32(f)</u>.

2.      This brief complies with the typeface and type-style requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)</u> and (a)(6) because it was prepared in Microsoft Office Word 16 in 14-point, proportionally spaced Century Schoolbook font.

<u>*/s/ Geoffrey D. Weisbart*</u>
Geoffrey D. Weisbart